**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No.11-cv-00243-REB-CBS

CENTER FOR BIOLOGICAL DIVERSITY,
DINE CITIZENS AGAINST RUINING OUR ENVIRONMENT, and
SAN JUAN CITIZENS ALLIANCE,

    Plaintiffs,

v.

JOSEPH PIZARCHIK, in his official capacity as Director, Office of Surface Mining Reclamation and Enforcement,
WESTERN REGION OFFICE OF SURFACE MINING RECLAMATION AND ENFORCEMENT, a federal agency within the U.S. Department of Interior, and
KEN SALAZAR, in his official capacity as U.S. Secretary of Interior,

    Defendants,

and

BHP NAVAJO COAL COMPANY and
THE NAVAJO NATION,

    Defendants – Intervenors.

---

## ORDER GRANTING MOTION TO DISMISS

**Blackburn, J.**

    The matter before me is **The Navajo Nation's Amended Motion To Dismiss** [#47][1] filed June 14, 2011. I grant the motion.

---

[1] "[#47]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

## I.  JURISDICTION

I have subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question).

## II.  STANDARD OF REVIEW

Intervenor The Navajo Nation ("Nation") seeks to dismiss plaintiff's complaint under Fed. R. Civ. P. 12(b)(7) for failure to join a required party, namely the Nation, under Fed. R. Civ. P. 19.  A party seeking dismissal for failure to join bears the burden of persuasion.  **Lenon v. St. Paul Mercury Insurance Co.**, 136 F.3d 1365, 1372 (10th Cir. 1998).

Determining whether a party is required under Rule 19 involves a two-step analysis.  **Sierra Club v. Young Life Campaign**, 176 F.Supp.2d 1070, 1077 (D. Colo. 2001).  First, the court determines whether the party is "required," as that term is defined by the rule:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

**FED. R. CIV. P.** 19(a)(1).  If the absent party meets one of these two standards, it must

be joined "if feasible."  **FED. R. CIV. P.** 19(a)(2).

If joinder is not feasible, such as when the required party enjoys immunity from suit, **see Citizens Potawatomi Nation v. Norton**, 248 F.3d 993, 997 (10th Cir. 2001), **modified on other grounds on reh'g en banc**, 257 F.3d 1158 (10th Cir. 2001), "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed," **FED. R. CIV. P.** 19(b). Rule 19(b) enumerates four factors that should be considered in determining whether to proceed:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
>> (A) protective provisions in the judgment;
>>
>> (B) shaping the relief; or
>>
>> (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

**FED. R. CIV. P.** 19(b)(1) - (4).

The Rule 19(b) factors are neither exclusive nor dispositive.  "The design of the Rule . . . indicates that the determination whether to proceed will turn upon factors that are case specific, which is consistent with a Rule based on equitable considerations." **Republic of the Philippines v. Pimentel**, 553 U.S. 851, 862-63, 128 S.Ct. 2180, 2188,

171 L.Ed.2d 131 (2008).  **See also Davis v. United States**, 192 F.3d 951, 961 (10th Cir.1999) ("The nature of the Rule 19(b) inquiry-a weighing of intangibles-limits the force of precedent and casts doubt on generalizations.") (citation and internal quotation marks omitted).  Thus, a determination under Rule 19 will be "based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests." **Pimentel**, 128 S.Ct. at 2189 (quoting **Provident Tradesmens Bank & Trust Co. v. Patterson**, 390 U.S. 102, 119, 88 S.Ct. 733, 743, 19 L.Ed.2d 936 (1968)) (internal quotation marks omitted).

### III.  ANALYSIS

Pursuant to the Surface Mining Control and Reclamation Act ("SMCRA"), 30 U.S.C. §§ 1201-1328, the Office of Surface Mining Reclamation and Enforcement ("OSM") is responsible for issuing permits for the operation of coal mines on tribal lands.  On September 7, 2010, the OSM granted intervenor BHP Navajo Coal Company ("BNCC") a five-year right of renewal of its permit to operate the Navajo Mine, which is located entirely within the boundaries of the Navajo Reservation.  BNCC holds a leasehold interest in the mine pursuant to a long-standing mining lease with the Nation.

Plaintiffs allege that defendants failed to consult with the United States Fish and Wildlife Service ("FWS") to consider the effect of mining operations on threatened or endangered species, as required by section 7(a)(2) of the Endangered Species Act of 1973 ("ESA"), 16 U.S.C. § 1536(a)(2), and its implementing regulations, 50 C.F.R. Part 400.  They ask the court to declare defendants' approval of the renewal permit unlawful,

set aside the renewal permit, and enjoin further coal mining activities at the Navajo Mine until such time as defendants fully comply with the ESA.

The Nation and BNCC sought and were granted leave to intervene in this action for the limited purpose of bringing the instant motion to dismiss. (*See* **Courtroom Minutes/Minute Order** [#58], filed July 7, 2011.) They maintain that this action must be dismissed because the Nation is a required party but cannot be joined as a result of its sovereign immunity. Under the prevailing standards set forth above, and, *a fortiori*, in light of the heavy weight to be afforded a sovereign's assertion of its immunity in these circumstances, I concur, and, therefore, grant the motion.

"Indian tribes are distinct, independent political communities, retaining their original natural rights in matters of local self-government. Although no longer possessed of the full attributes of sovereignty, they remain a separate people, with the power of regulating their internal and social relations." ***Santa Clara Pueblo v. Martinez***, 436 U.S. 49, 55, 98 S.Ct. 1670, 1675, 56 L.Ed.2d 106 (1978) (internal citations and quotation marks omitted). Accordingly, the Nation enjoys sovereign immunity, which has neither been abrogated by Congress nor waived in this instance.[2] ***See Kiowa Tribe of Oklahoma v. Manufacturing***, 523 U.S. 751, 754, 118 S.Ct. 1700, 1702, 140 L.Ed.2d 981 (1998). As a consequence, it cannot be joined in this lawsuit. ***See Manygoats v. Kleppe***, 558 F.2d 556, 558 (10th Cir. 1977); ***Dine Citizens Against Ruining Our Environment v. Klein***, 676 F.Supp.2d 1198, 1215 (D. Colo. 2009).

---

[2] That the Nation could waive immunity and intervene in this lawsuit for all purposes if it so chose is, of course, not a relevant consideration. ***See Northern Arapaho Tribe v. Harnsberger***, 660 F.Supp.2d 1264, 1281 (D. Wyo. 2009) (citing ***Navajo Tribe of Indians v. State of New Mexico***, 809 F.2d 1455, 1472 n.25 (10th Cir. 1987)).

The first question the court must answer, then, is whether the Nation is a required party pursuant to Fed. R. Civ. P. 19(a)(1)(B)(i), that is, whether it "claims an interest relating to the subject of the action and is so situated that disposing of the action in [its] absence may . . . as a practical matter impair or impede [its] ability to protect the interest."[3]  Under this rule, the court need not – indeed, must not – consider the merits of the absent party's asserted interest.  "Rule 19, by its plain language, does not require the absent party to actually *possess* an interest; it only requires the movant to show that the absent party *claims an interest* relating to the subject of the action."  **Citizen Potawatomi Nation**, 248 F.3d at 998 (quoting **Davis**, 192 F.3d at 958) (internal quotation marks omitted; emphases in original).  So long as that interest is neither "fabricated nor frivolous," it is not excluded from consideration under Rule 19(a).  **Davis ex rel. Davis v. United States**, 343 F.3d 1282, 1289 (10th Cir. 2003), **cert. denied**, 124 S.Ct. 2907 (2004).

The Nation has presented substantial evidence supporting its claimed economic interests in this lawsuit.  It has offered the declaration of Charles J. Cicchetti, Ph.D., an economist and professor of economics, to substantiate the nature and extent of these interests.[4]  Dr. Cicchetti notes that in 2007, the Navajo Mine paid nearly $39 million in royalties and taxes to the Nation, constituting some 24 percent of the Nation's internal budget for the year.  He suggests that cessation of operations at the mine could result in

---

[3] The Nation does not claim required party status under either Rule 19(a)(1)(A) or (a)(1)(B)(ii), and I, therefore, do not consider the potential applicability of either of those iterations of the rule.

[4] The submission of this declaration alone serves to distinguish this case from **Klein** on which plaintiffs rely so heavily.  **See Klein**, 676 F.Supp. at 1215 (noting that defendants in that case "produced no evidence with respect to [required party issues] in their opening brief, and scant evidence in their reply after Plaintiffs challenged them on this point in opposition to the motion").

a loss of royalty revenue of some $33 million, roughly 17 percent of the Nation's gross revenue from internal sources in 2008.  The Nation also receives significant direct and indirect tax revenue from the operation of the Navajo Mine that would be lost if operation ceases.

In addition, Dr. Cicchetti points out that the Navajo Mine is one of the Nation's largest single employers, employing more than 400 workers, the vast majority of whom are members of the Nation.  In an area where unemployment hovers above 50 percent, and nearly 37 percent of the population lives below the poverty level, these relatively well-paying jobs[5] account for 7.63 percent of the total income, salary, and benefits earned on the reservation.  The Navajo Mine also supports other jobs in the local economy that would be adversely impacted if it were to cease operation.  Dr. Cicchetti opines that the loss of salary for individual workers further can be expected to have multiplier effects in the Nation's economy as a whole, as unemployed workers have less money to spend in the local economy.

Economic interests such as these are plainly sufficient to satisfy Rule 19(a).  **See Manygoats**, 558 F.3d at 558; **Klein**, 676 F.Supp.2d at 1216.  Plaintiffs attempt to soft-pedal these deleterious financial consequences by arguing that they are merely speculative and unreasonably premised on the assumption that the mine will cease operation.  The first assertion is nothing more than plaintiffs' mere *ipse dixit*.  The various types of income derived from the operation of the mine over the recent past

---

[5] Dr. Cicchetti suggests that in 2002, comparable coal mining jobs paid an average annual income of $55,530, more than 2.75 times the median annual household income on the Navajo Reservation ($20,005).

7

years is a more than sufficient basis on which to project future expected income.

Plaintiffs' second contention – that the argument assumes that the mine will cease operation – ignores the very allegations of their own amended complaint. Plaintiffs plainly state that they "seek vacatur of the Permit and an injunction *preventing coal mining activities under the Permit* unless and until Defendants fully comply with the ESA." (**Amended Complaint for Review of Federal Agency Action** ¶11 at 4 [#11] filed February 23, 2011 (emphasis added).)  There is, thus, little doubt that a resolution in plaintiffs' favor would result in closure of the mine for some indefinite period of time, if not permanently.  Moreover, the allegations of the amended complaint suggest the strong possibility that the FWS might, indeed, conclude that operations of the mine threaten endangered species, further casting doubt on the continuation of mine operations into the future.  (*See id.* ¶¶ 52-62 at 13-15.)

Plaintiffs aver further that the Nation's economic interests cannot convey required party status unless "the challenged decision, agreement, contract, lease or other instrument is issued or executed directly by the Indian tribe or where the tribe has a direct interest in a fixed fund or limited resource that the court is asked to adjudicate." (**Response in Opposition to the Navajo Nation's Amended Motion To Dismiss (Doc. 47)** at 7 [#64] filed August 5, 2011 (original emphasis omitted).)[6]  I do not believe the cases plaintiffs cite in support of this purported principle stand for that proposition.

---

[6] Although the *Klein* court distinguished cases on which the defendants there relied as "each involv[ing] a direct challenge to a tribe's property right or to an agreement to which a tribe was a party," 676 F.Supp.2d at 1216, it did not suggest that the existence of such a right was a prerequisite to required party status in all instances.  Moreover, if such a requirement did exist, the relief sought by this lawsuit clearly would interfere with the Nation's mining lease with BNCC.  *Cf. id.* at 1217 (noting that in that case, plaintiffs did not seek to enjoin all mining under the lease).

Instead, and despite their divergent facts, all these cases essentially stand for the same, unremarkable, proposition – that the asserted interest must be "of such a *direct* and *immediate* character that the [absent party] will either gain or lose by the direct legal operation and effect of the judgment." **United Keetoowah Band of Cherokee Indians of Okla. v. United States**, 480 F.3d 1318, 1325 (Fed. Cir. 2007) (citation and internal quotation marks omitted; emphases and alteration in original). In examining that salient question, I "must begin by correctly characterizing the pending action between those already parties to the action." *Id.* at 1326.

Rule 19(a)(1)(B) confers required party status on one who "claims an interest relating to the subject of the action." The subject matter of the present action is the validity of the renewal permit issued to BNCC. If the permit is declared invalid and, thus, revoked, the significant, adverse, economic consequences to the Nation outlined in Cicchetti's declaration are likely to follow.[7] These interests are neither frivolous nor fabricated. **See Davis**, 192 F.3d at 959. **See also Kescoli v. Babbitt**, 101 F.3d 1304, 1309-10 (9th Cir. 1996). Therefore, those interests are sufficient to confer required party status on the Nation.

Nor am I persuaded by plaintiffs' argument that defendants will adequately represent the Nation's interests such that it will not be prejudiced by nonjoinder. An absent party is not required under Rule 19 if its interests will be fairly represented by those already party to the lawsuit. **See Sac and Fox Nation of Missouri v. Norton**, 240 F.3d 1250, 1259 (10th Cir. 2001), **cert. denied**, 122 S.Ct. 807 (2002); **Manygoats**,

---

[7] No one suggests that the mine may continue to operate absent the permit.

558 F.2d at 558. However, the existing parties' interests must be "virtually identical" to those of the Nation. **Sac and Fox Nation**, 240 F.3d at 1259.[8]

Such is not the case here. The Nation has significant and important economic interests in the uninterrupted continuation of the Navajo Mine, which interests simply do not impel OSM or the Department of the Interior. If the permit is vacated, the potential impact on the federal defendants will not include a 25 percent reduction (if any) in their own internal budgets or the loss of a significant number (if any) of jobs within the agency. While a vacatur of the permit may be inconvenient for the federal defendants, contrastingly, it is potentially devastating for the Nation. **See Manygoats**, 558 F.2d at 558 (noting that "[t]he national interest is not necessarily coincidental with the interest of the Tribe in the benefits which the [] agreement provides"). Moreover, even if the federal defendants might conceivably "make all of the [Nation's] arguments" and are "capable of and willing to make such arguments" – a proposition of which I am not convinced – the Nation's unique role in relation to its members and to the management of its own lands means that it "would offer [a] necessary element to the proceedings that the present parties [might] neglect." **Washington v. Daley**, 173 F.3d 1158, 1167 (9th Cir. 1999) (citation and internal quotation marks omitted; alterations supplied).

For these reasons, I find and conclude that the Nation is a required party under

---

[8] Although a conflict of interest would clearly preclude adequate representation by the existing parties, **see Citizen Potawatomi Nation**, 248 F.3d at 999, plaintiffs' attempt to make such conflict a *necessary* condition of the analysis ignores the important role sovereign immunity plays in the Rule 19 analysis, as discussed more thoroughly below. **See Enterprise Management Consultants, Inc. v. United States ex rel. Hodel**, 883 F.2d 890, 894 (10th Cir. 1989) (noting difference between United States' ability to adequately represent absent tribes' interest as plaintiff and situations implicating tribes' rights as sovereigns not to be sued without their consent). In addition, an alleged *alignment* of interests is a far cry from an *identity* of interests. **See Northern Arapaho Tribe**, 660 F.Supp.2d at 1281.

10

Fed. R. Civ. P. 19(a)(1)(B)(i), that is, that the Nation claims an interest relating to the subject of this action and is so situated that disposing of the action in its absence may, as a practical matter, impair or impede its ability to protect that interest. To rehearse, joinder of the Nation is not feasible because of its sovereign immunity. Thus, I turn to the provisions of Rule 19(b) to determine whether, even in the Nation's absence, this action may proceed.

As noted above, Rule 19(b) requires a balancing of relevant, fact-specific considerations that bear on the question "whether, in equity and good conscience, the action should be proceed among the existing parties or should be dismissed." **FED. R. CIV. P.** 19(b). Nevertheless, "[w]hen, as here, a necessary party under Rule 19(a) is immune from suit, there is very little room for balancing of other factors set out in Rule 19(b), because immunity may be viewed as one of those interests compelling by themselves." ***Enterprise Management Consultants, Inc. v. United States ex rel. Hodel***, 883 F.2d 890, 894 (10th Cir. 1989) (internal citations and quotation marks omitted). Recently, the United States Supreme Court has reinforced the primacy of sovereign immunity in this analysis. ***Pimentel***, 128 S.Ct. at 1289-94.[9] Thus, although the Rule 19(b) factors still must be considered, my "discretion in balancing the equities . . . is to a great degree circumscribed, and the scale is already heavily tipped in favor of dismissal." ***Northern Arapaho Tribe v. Harnsberger***, 660 F.Supp.2d 1264, 1280 (D.

---

[9] The Nation argues at length that ***Pimentel*** essentially has overruled ***Manygoats v. Kleppe***, 558 F.2d 556 (10th Cir. 1977). As I find ***Manygoats*** and the more recent decision of another court in this district, which relied on it heavily, ***see Klein***, 676 F.Supp.2d 1198, distinguishable on their facts, I need not go quite so far. Nevertheless, to the extent these decisions failed to consider the effect of the absent tribes' sovereign immunity in the Rule 19 analysis, I find ***Pimentel***, as well as other Tenth Circuit decisions specifically addressing the issue directly, more persuasive and authoritative.

Wyo. 2009).

The first two Rule 19(b) factors are concerned with prejudice to the absent and existing parties and the extent to which any such prejudice can be lessened or avoided. **FED. R. CIV. P.** 19(b)(1) & (2). The answers to these questions must give due consideration to the absent party's sovereign immunity. ***Pimentel***, 128 S.Ct. at 2189-90; ***Northern Arapaho Tribe***, 660 F.Supp.2d at 1280. Indeed, where sovereign immunity is asserted, prejudice to the absent sovereign's interests is nearly a foregone conclusion: "[D]ismissal of the action must be ordered where there is a potential for injury to the interests of the absent sovereign." ***Pimentel***, 128 S.Ct. at 2191. Such deference is required to "[g]iv[e] full effect to sovereign immunity[, which] promotes the comity interests that have contributed to the development of the immunity doctrine." ***Id.***

Moreover, consideration of the prejudice prongs of Rule 19(b) "is essentially the same as the inquiry under Rule 19(a)(2)(i) [now renumbered as Rule 19(a)(1)(B)(i)][10] into whether continuing the action without a person will, as a practical matter, impair that person's ability to protect his interest relating to the subject of the lawsuit." ***Enterprise Management Consultants***, 883 F.2d at 894. From that earlier discussion, it is clear that a judgment rendered in the Nation's absence might prejudice its substantial interests, both economic and those of "historical and political significance." ***Pimentel***, 128 S.Ct. at 2190. Nor does it appear feasible to eliminate or extenuate such prejudice by manipulation of the relief provided or otherwise. Indeed, in fashioning relief under

---

[10] Rule 19 was amended in 2007 for stylistic purposes only. ***See Pimentel***, 128 S.Ct. at 2184-85; **FED. R. CIV. P.** 19, Adv. Comm. Notes, 2007 Amend. Whereas previously, Rule 19(a) considered whether a party was "necessary" and Rule 19(b) addressed whether such a necessary party was, in addition, "indispensable," the present version of Rule 19 speaks globally of "required" persons.

the ESA, "Congress has removed from the courts their traditional equitable discretion in balancing the parties' competing interests." **Silver v. Babbitt**, 924 F.Supp. 976, 988 (D. Ariz. 1995). Given that the relief plaintiffs seek inevitably would require cessation of operations at the Navajo Mine for some period of time, it is difficult to discern any way in which the Nation's interests could be protected. Thus, I find and conclude that the considerations of prejudice set forth in Fed. R. Civ. P. 19(b)(1) & (2) weigh heavily in favor of dismissal.

     Rule 19(b)(3) inquires focuses on whether a judgment rendered in the Nation's absence would be adequate. Adequacy in this context "refers to the public stake in settling disputes by wholes, whenever possible" and addresses the "social interest in the efficient administration of justice and the avoidance of multiple litigation." **Pimentel**, 128 S.Ct. at 2193 (citations and internal quotation marks omitted). Neither the Nation nor plaintiffs appear to have understood the thrust of this factor in their briefing. It is not clear, therefore, whether there is a danger of piecemeal litigation in this matter and whether or to what extent the Nation may be bound by any judgment rendered in this action. **See Northern Arapaho Tribe**, 660 F.Supp.2d at 1282. Were it not for the overriding significance of sovereign immunity in this case, I would find this factor neutral. However, because of the preponderant overlay of sovereign immunity, I am compelled to conclude that it too weighs in favor of dismissal, although less heavily than the first two Rule 19(b) factors.

     Finally, I must consider the extent to which plaintiffs will have an adequate remedy if the action is dismissed. It is not entirely clear whether plaintiffs may have

other avenues of appeal at the administrative level. (**See Amended Motion** at 14 (suggesting that plaintiffs had a right, now apparently extinguished, to administrative adjudication before the Department of the Interior's Office of Hearing and Appeals, and may have a right still before the Department's Interior Board of Land Appeals). Regardless, "the plaintiff's inability to obtain relief in an alternative forum is not as weighty a factor when the source of that inability is a public policy that immunizes the absent person from suit." **Davis**, 343 F.3d at 1293-94. Thus, "this final factor militating against dismissal can be outweighed by the weight of the first three factors in favor of dismissal." **Northern Arapaho Tribe**, 660 F.Supp.2d at 1283.

I am not insensitive to the fact that dismissing this action for failure to join a required party may mean, as a practical matter, that the permitting decision is unreviewable in the absence of the Nation's consent. **See Manygoats**, 558 F.2d at 559 (finding that dismissal for nonjoinder of Indian tribe "would produce an anomalous result" because "[n]o one, except the Tribe, could seek review of [a NEPA-required] environmental impact statement covering significant federal action relating to leases or agreements for development of natural resources on Indian lands").[11]  Yet such is the

---

[11] I am not persuaded by plaintiffs' attempt to invoke the "public interest exception" to Rule 19. **See Natural Resources Defense Council, Inc. v. Berklund**, 458 F.Supp. 925, 933 (D.D.C. 1978) ("The Supreme Court has long recognized the inapplicability of the term 'indispensable party' to adjudications of public, not private rights. . . . [W]hen litigation seeks the vindication of a public right, third persons who may be adversely affected by a decision favorable to the plaintiff do not thereby become indispensable parties.") , **aff'd**, 609 F.2d 553 (D.C. Cir. 1979). Procedurally, this argument is woefully underdeveloped, and, thus, I am neither required nor inclined to consider it on the merits. **See South Denver Anesthesiologists, PC v. Oblachinski**, 2007 WL 2255123 at *1 (D. Colo. Aug. 3, 2007) (noting that court does not consider "cursory, unsupported, or otherwise inadequately briefed arguments"). Even it I were to do so, however, I note that neither of the cases plaintiffs cite discuss the public rights doctrine in the context of a required party's sovereign immunity. My own research suggests that the doctrine is unlikely to apply in these circumstances. **See Kescoli**, 101 F.3d at 1311-12 (although noting that "[t]he contours of the public rights exception have not been clearly defined," rejecting its application where suit "threaten[ed] the Navajo Nation's and the Hopi Tribe's sovereignty by attempting to disrupt their ability to

not infrequent result of honoring sovereign immunity.  *Pimentel*, 128 S.Ct. at 2194

("Dismissal under Rule 19(b) will mean, in some instances, that plaintiffs will be left

without a forum for definitive resolution of their claims.  But that result is contemplated

under the doctrine of foreign sovereign immunity.").  The Supreme Court's holding in

*Pimentel* demands that I give "sufficient" weight to the Nation's sovereign immunity in

order to promote comity and mutual dignity between co-equal powers.  *Id.* at 2190,

2194.  In this instance, that weight is dispositive and requires dismissal pursuant to Rule

19.

### IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That **The Navajo Nation's Amended Motion To Dismiss** [#47] filed June 14, 2011, is **GRANTED**;

2. That the **Amended Complaint for Review of Federal Agency Action** [#11], filed February 23, 2011, by plaintiffs is **DISMISSED WITHOUT PREJUDICE** for failure to join a required party under Rule 19; and

3. That judgment **SHALL ENTER** on behalf of defendants, Joseph Pizarchik, in his official capacity as Director, Office of Surface Mining Reclamation and Enforcement; Western Region Office of Surface Mining Reclamation and Enforcement, a federal agency within the U.S. Department of Interior; and Ken Salazar, in his official capacity as U.S. Secretary of Interior, against plaintiffs, Center for Biological Diversity; Diné Citizens Against Ruining Our Environment; and San Juan Citizens Alliance, on all

---

govern themselves and to determine what is in their best interests").

claims for relief and causes of action; provided, however, that the judgment **SHALL BE**

without prejudice.

Dated March 14, 2012, at Denver, Colorado.

**BY THE COURT:**

_____
Robert E. Blackburn
United States District Judge